## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:91-cr-00504-EGS-3** |
| | ) | |
| **ZAYD HASSAN ABD AL-LATIF** | ) | |
| **MASUD AL SAFARINI** | ) | |

### UNITED STATES' OPPOSITION TO THE DEFENDANT'S
### SUPPLEMENT TO MOTION TO DISMISS AND OTHER FILINGS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to: 1) the defendant's *pro se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest, filed on April 21, 2020 [Dkt. 168]; 2) the defendant's *pro se* Motion for Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of the United States Without Amending the Pleadings But in Support of the Original Filings Now Showing that With Support of the Supreme Court Decisions the District Court Lacked Subject Matter Jurisdiction and Personal Jurisdiction of the Petitioner and as a Result the Plea Agreement Should be Vacated and Judgment Set Aside and Manifest of Injustice be Corrected [Dkt. 169]; and 3) the defendant's Supplement to Motion to Dismiss, filed on by counsel on May 12, 2020 [Dkt. 170].

For the reasons stated in the government's Omnibus Opposition to the defendant's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and his *pro se* Motion to Dismiss Counts of the Indictment Under Titles 18 U.S.C. §§ 2331 and 844(i), Titles 49 U.S.C. §§ 1472 and 46502 and Void Plea Agreement for Lack of Jurisdiction [Dkt. 159], the government's Surreply to the defendant's Reply to the government's

Omnibus Opposition [Dkt. 162], and the additional reasons set forth below, the defendant's post-conviction motions should be summarily denied.

## I.     PROCEDURAL BACKGROUND

On August 29, 1991, the defendant was indicted and charged with 126 counts related to the attempted hijacking of Pan Am Flight 73 in Pakistan on September 5, 1986.  On August 28, 2002, a superseding indictment was returned charging the defendant with 95 counts related to the same attempted hijacking.  On December 16, 2003, the defendant pled guilty to all of the charges pursuant to a plea agreement.  On May 13, 2004, this Court sentenced the defendant to a total sentence of three consecutive life sentences, plus 25 years; the judgment was entered on May 24, 2004.

Nearly 13 years later, in February 2017, the defendant filed a *pro se* § 2255 motion [Dkt. 141] and a *pro se* motion to dismiss [Dkt. 145].  On September 12, 2017, the government filed its Omnibus Opposition to the defendant's *pro se* motions [Dkt. 151].

On September 21, 2017, the Court appointed counsel, Jerry Ray Smith, Esquire, to represent the defendant.  On May 21, 2018, the defendant, through counsel, filed a Reply to the government's Omnibus Opposition [Dkt. 159].  On September 12, 2018, the government filed its Surreply [Dkt. 162].

On September 21, 2018, the defendant's counsel filed a Motion to Stay Post-Conviction Proceedings, pending the receipt of certain medical records.  On October 3, 2018, the Court granted the defense motion by Minute Order.  On February 11, 2020, the defendant's counsel filed a Motion to Lift Stay and Set Deadlines for Filing Supplement to Post-Conviction Pleading [Dkt. 164].  On April 13, 2020, the defendant's counsel filed a Motion for Leave to Expand the Record Under Seal, with attachments, and an accompanying Motion for Leave to File Motion Under Seal

[Dkt. 166].  On April 21, 2020, the defendant filed a *pro se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest [Dkt. 168].  On the same day, the defendant filed a *pro se* Motion for Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of the United States Without Amending the Pleadings But in Support of the Original Filings Now Showing that With Support of the Supreme Court Decisions the District Court Lacked Subject Matter Jurisdiction and Personal Jurisdiction of the Petitioner and as a Result the Plea Agreement Should be Vacated and Judgment Set Aside and Manifest of Injustice be Corrected [Dkt. 169].  On May 12, 2020, defendant's counsel filed a Supplement to Motion to Dismiss [Dkt. 170].

The government now files this Opposition to the defendant's most recent filings listed above [Dkts. 168, 169, 170].

## II.  ARGUMENT

In his numerous post-conviction filings, the defendant plays the same tune, but keeps changing the key.  The defendant's most recent filings involve challenges on various grounds to his guilty plea to Count 8, Attempt to Commit Air Piracy Resulting in Death ("Attempt to Commit Air Piracy"), charged pursuant to 49 U.S.C. App. § 1472(i).  First, he reiterates that he was not properly charged with and, consequently, could not plead guilty to the crime of Attempt to Commit Air Piracy because Pan Am Flight 73 was not in flight at the time the defendant and four other armed men hijacked the aircraft and executed and/or wounded its passengers and crew.  Second, he claims that his guilty plea was not knowing and voluntary because the Court lacked jurisdiction over this charge because the airplane was not in flight.  The defendant asserts additional, related arguments with respect to his conviction for Attempt to Commit Air Piracy.  Finally, the defendant raises an additional argument with respect to his conviction pursuant to 18 U.S.C. § 924(c), Count 95, based upon a recent Supreme Court decision.

The government has responded to most, if not all, of the defendant's arguments in its Omnibus Opposition, filed on September 12, 2017 [Dkt. 151], and its Surreply, filed on September 12, 2018 [Dkt. 162]. In essence, and as explained in the government's pleadings, the Court did not lack jurisdiction over Count 8 because 49 U.S.C. App. § 1472(i), in effect on September 5, 1986, the date the defendant and his co-defendants attempted to hijack Pan Am Flight 73 on the tarmac in Karachi, Pakistan, did not require that an aircraft be in flight. To the extent the defendant raises new twists to these same arguments or raises additional related arguments, all of these arguments fail. The government responds below.

A.     **The Defendant's *Pro Se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest [Dkt. 168] Should be Summarily Denied.**

In his *pro se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest [Dkt. 168], the defendant repeats his argument that "this Court and by extension the Government lacks any and all subject matter jurisdiction" over the charge of Attempt to Commit Air Piracy, once again claiming that "the specific facts of this case do not support the jurisdictional bases of the statute on it's [sic] face" because Pan Am Flight 73 was not in flight at the time he and his co-defendants committed the hijacking. Defendant's *Pro Se* Motion to Clarify and Narrow the Issue, at 2, 3. To supplement his argument, the defendant relies on two cases not cited in his previous pleadings. *Id.* at 2. These cases do not support his position, and *dicta* in each of these cases affirms the government's position that the defendant was properly charged with and convicted of Attempt to Commit Air Piracy in this case.

In *United States v. Lopez,* 885 F.2d 1428 (9th Cir. 1989), one of the two defendants was convicted of air piracy for commandeering a helicopter to assist in the escape from prison of the other defendant. The defendant who committed the air piracy sought lesser-included jury

instructions for offenses of theft of the helicopter and flying without a pilot's certificate (both of which were denied by the trial court).  The Ninth Circuit held that that the defendant was not entitled to lesser-included offense instructions because the offenses of theft and flying without a pilot's certification were not lesser included offenses of air piracy, after reviewing the elements of air piracy.  *Id.* at 1437.  The Ninth Circuit further observed:

> . . . Congress has defined air piracy as "any seizure or exercise of control, by force or violence or threat of force or violence, or by any other form of intimidation, and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States." 49 U.S.C. App. § 1472(i)(2) (1982).  An aircraft is deemed to be within the special aircraft jurisdiction of the United States "while that aircraft is in flight, which is from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation."  49 U.S.C. App. § 1301(38) (Supp. II 1984).
>
> **It is clear, then, that the individual can be convicted for air piracy for asserting control over an aircraft by force or threat of force even though the aircraft was never moved *anywhere*.**  Theft, in contrast, is defined as the unlawful taking *and carrying away* of property. . . .  Thus, it possesses an asportation element that need not be proved in the air piracy context.  Similarly, although failure to possess a pilot's certificate is the gravamen of a flying without a license claim, possession of certification to pilot an aircraft is totally irrelevant to the charge of air piracy.  Since both theft and flying without a pilot's certificate possess an element foreign to the crime of air piracy, they cannot be deemed "necessarily included in the crime charged.". . . .

885 F.2d at 1437 (emphasis added and in original).  The defendant's convictions in *Lopez* were affirmed.

Similarly, in *United States v. Mena,* 933 F.2d 19 (1st Cir. 1991), the defendant was convicted of air piracy, boarding an aircraft with an explosive or incendiary device, placing a destructive device on board an aircraft and transporting an explosive in interstate commerce with intent to intimidate.  The defendant hijacked a seaplane *en route* from St. Thomas to Puerto Rico, carrying a tin can that he claimed to be a "very sensitive explosive device" and threatening to "blow up the aircraft" if he was not flown to Cuba.  The flight landed in Puerto Rico, remained on the tarmac after the passengers and crew were allowed to leave the aircraft, and the defendant was

ultimately arrested after exiting the aircraft several hours later.  The can was found to contain a substance similar to kerosene.  On appeal from his convictions, the defendant argued that since the crew never relinquished control of the aircraft, at most, the evidence established an attempt, which was not charged.  The First Circuit noted that "the foundation of these contentions – counsel's assertion that, in this case, the Air Piracy Statute only criminalizes conduct which occurred while the aircraft was aloft – is set in quicksand."  933 F.2d at 24.  The First Circuit further noted that to convict the defendant of air piracy, the government must prove that the first three elements of the statute were committed "within the special aircraft jurisdiction of the United States" and that the special aircraft jurisdiction attaches "while th[e] aircraft is in flight, which is from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation or in the case of a forced landing, until the competent authorities take over responsibility for the aircraft and for the persons and property aboard."  *Id.*  The defendant claimed that his guilt of the offense must be judged solely on the basis of his conduct up until disembarkation began, because the aircraft landed when and where it was scheduled to land, and therefore, there was no "forced landing" involved.  The First Circuit rejected this argument as "unfounded."  *Id.*

While the *Mena* case is factually different from the defendant's because the *Mena* defendant successfully hijacked an aircraft in flight, the Court's consideration of the "forced landing" component of the definition of "special aircraft jurisdiction of the United States" is instructive.  The Court reasoned:

> Where, as here, a pilot lands a hijacked aircraft at a scheduled time and place, but does so subject to the hijacker's permission, ostensibly to refuel for the next leg of the hijacker's jaunt, we think it fair to say that the landing is "forced" – no less so than if the pilot, under precisely the same circumstances, put down to refuel at an airport a few miles away. . . . In adopting this interpretation of section 1301(38), we harmonize the various parts of the statutory scheme by reading the term "forced landing" in *pari materia* with the reference

> to "force or violence or threat of force or violence" contained in 49 U.S.C. App. §
> 1472(i)(2).  A "forced landing," in short, includes any landing by an airplane laboring under
> the rigors of an ongoing hijacking, that is to say, laboring under the impetus of force,
> violence, or intimidation.

*Id.*  Since the jury in *Mena* could have found that the landing was "forced," the aircraft remained

within the special aircraft jurisdiction of the United States until the defendant exited the aircraft

and "competent authorities [took] over the responsibility for the aircraft" and it was proper for the

jury to consider the defendant's actions on the ground in Puerto Rico as direct evidence that he

had seized and exercised control over the aircraft.  *Id.* at 25.  The First Circuit then analyzed the

legislative history of the air piracy statute to determine that there was ample evidence that the

defendant seized and exercised control over the aircraft.  *Id.* at 25-26.  The convictions were

affirmed.

Thus, the holdings in *Lopez* and *Mena* – both of which dealt with a completed air piracy

offense – do not support the defendant's argument that the Court lacked subject matter jurisdiction

over the charge of Attempt to Commit Air Piracy.

In any event, the defendant was properly charged with the attempted hijacking of Pan Am

Flight 73 pursuant to 49 U.S.C. App. § 1472(i) based upon the facts of this case.  *See* Government's

Omnibus Opposition [Dkt. 151], pp. 23-26.  The offense, Attempt to Commit Air Piracy Resulting

in Death, does *not* require proof that the airplane was in flight at the time of the crime.  *See* 49

U.S.C. App. § 1472(i)(3) ("An attempt to commit aircraft piracy shall be within the special aircraft

jurisdiction of the United States **even though the aircraft is not in flight at the time of such**

**attempt** if the aircraft would have been within the special aircraft jurisdiction of the United States

had the offense of aircraft piracy been completed.") (emphasis added).  The government's proof

established that on September 5, 1986, the defendant and his co-defendants seized control of Pan

Am Flight 73 at the airport in Karachi, Pakistan and attempted to hijack the plane and to force the

cockpit crew to fly to Israel, where the defendants planned to detonate explosives on board the aircraft, causing a mid-air destruction of the aircraft and the murder of all persons on board. There was no proof that the defendants committed a completed air piracy because the plane never left the tarmac.

Thus, the defendant was properly charged with violating the aircraft piracy statute as it existed at the time of his crimes. His conduct was contemplated and intended by Congress to be punished under 49 U.S.C. App. § 1472 (i), as an attempted aircraft piracy, and the proof of facts, as proffered by the government and pled to and acknowledged by the defendant, fully supports his conviction of attempted aircraft piracy. The Court clearly had jurisdiction to preside over the case, charging the defendant with federal crimes within the authority of the government to prosecute.

Moreover, by entering a plea of guilty, the defendant is precluded from collaterally attacking his conviction and sentence on any grounds (except for ineffective assistance of counsel) by the express terms of his plea agreement and he waived his right to challenge the sufficiency of the evidence supporting his convictions. *See* Government's Omnibus Opposition [Dkt. 151], pp. 17-26. Accordingly, this claim should be summarily denied.

**B.     The Defendant's *Pro Se* Motion for Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of the United States Without Amending the Pleadings But in Support of the Original Filings Now Showing that With Support of the Supreme Court Decisions the District Court Lacked Subject Matter Jurisdiction and Personal Jurisdiction of the Petitioner and as a Result the Plea Agreement Should be Vacated and Judgment Set Aside and Manifest of Injustice be Corrected [Dkt. 169] Should Be Summarily Denied.**

In his *pro se* Motion for Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of the United States Without Amending the Pleadings But in Support of the Original Filings Now Showing that With Support of the Supreme Court Decisions the District Court Lacked Subject Matter Jurisdiction and Personal Jurisdiction of the Petitioner and as a Result the Plea Agreement

Should be Vacated and Judgment Set Aside and Manifest of Injustice be Corrected [Dkt. 169], the defendant supplements his challenge to his conviction for Use of a Firearm During a Crime of Violence, charged pursuant to 18 U.S.C. § 924(c) (Count 95), based upon the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), with the Supreme Court's decision in *Davis v. United States*, 139 S. Ct. 2319 (2019), decided on June 24, 2019.  The defendant also reiterates his subject matter jurisdiction challenge to his Attempt to Commit Air Piracy conviction, adding a reference to a district court's decision in *United States v. Georgescu,* 723 F. Supp. 912 (E.D.N.Y. 1989), to further support his argument.  The government discusses why each claim fails below.

> **1.      The Supreme Court's Decision in *Davis v. United States*, 139 S. Ct. 2319 (2019) Does Not Invalidate the Defendant's § 924(c) Conviction (Count 95).**

In the government's pleadings in response to the defendant's earlier filings, the government did not dispute that *Johnson* recognizes a "new right" under the limitations period found in Section 2255(f)(3).  *See* Government's Omnibus Opposition, pp. 11-15; Government's Surreply, pp. 22-25.  Rather, the government's position was that the defendant's challenge to his § 924(c) conviction (Count 95) based upon *Johnson* was untimely because the defendant failed to file his claim by June 26, 2016, as required by the one-year period of limitations set forth in 28 U.S.C. § 2255(f)(3).  *Id.*  The government also argued that the defendant's *Johnson* claim failed on the merits.  *Id.*

Since the government's filings (and the defendant's earlier filings), the Supreme Court issued its opinion in *Davis v. United States*, 139 S. Ct. 2319 (2019), holding that the definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B), the residual clause, is constitutionally vague.[1]

---

[1]      In its Surreply, the government respectfully requested that the Court stay its ruling on the defendant's *Johnson* claim pending the D.C. Circuit's decision on the government's petition for rehearing *en banc* in *United States v. Eshetu* 898 F.3d 36 (D.C. Cir. 2018).  Government's Surreply, at 4.  In *Eshetu*, the D.C. Circuit held that the residual clause of 18 U.S.C. § 924(c) was unconstitutionally void for vagueness.  In light of *Davis*, this issue is now resolved and there is no need for a stay.

*Davis* was decided on June 24, 2019.  Thus, the defendant arguably had until June 24, 2020, to raise his challenge to his § 924(c) conviction based upon *Davis*.  The defendant's supplemental motion [Dkt. 169], filed on April 20, 2020, appears to be timely filed.  As explained below, the defendant's new argument based upon *Davis* is meritless.

Section 924(c) generally penalizes using, carrying or possessing a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  A "crime of violence" is defined in § 924(c)(3) as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3).  The first clause is known as the "force" or "elements clause," while the second clause is referred to as the "residual clause."  *See United States v. McDaniels*, 147 F. Supp. 3d 427, 429 (E.D. Va. 2015).

In *Davis*, the Supreme Court struck down § 924(c)'s residual clause, § 924(c)(3)(B), as unconstitutionally vague.  *United States v. Davis*, 139 S. Ct. 2319 (2019).  *Davis* follows on the heels of other Supreme Court decisions, including *Johnson*, finding similarly worded residual clauses unconstitutionally vague.  *See Johnson* (striking down as void for vagueness the residual clause found in 18 U.S.C. § 924(e), which defines in part a "violent felony" under the Armed Career Criminal Act ("ACCA")); *Dimaya v. Sessions*, 138 S. Ct. 1204 (2018) (striking down as void for vagueness the residual clause found in 18 U.S.C. § 16, which defines in part an "aggravated felony" for the purposes of several federal statutes).  However, *Davis* did not invalidate § 924(c)'s force or elements clause, § 924(c)(3)(A).  *Davis*, 139 S. Ct. at 2336.

The defendant cites *Davis*, but makes no argument as to how *Davis* applies to his case.  As the government previously argued, the defendant's challenge to his § 924(c) conviction should be summarily denied because it is premised on the mistaken assertion that the crime of Attempt to Commit Air Piracy (Count 8) was a predicate offense for the defendant's § 924(c) conviction in this case.  Government's Omnibus Opposition, at 12; Government's Surreply, at 2-3.  Rather, the 17 predicate offenses for Count 95, the § 924(c) charge, were listed in the Superseding Indictment and Plea Agreement, and primarily involved the federal charges of murder and attempted murder: Murder of a United States National Outside the United States  (Counts 3 and 4); Hostage Taking (Count 11); Attempted Murder of a United States National Outside of the United States (Counts 27, 30, 37, 45, 49, 55 and 60); and Causing Serious Bodily Injury to a United States National Outside the United States (Counts 88 to 94).   *See* Superseding Indictment [Dkt. 26]; Plea Agreement, Appendix B [Dkt. 118].  The defendant makes no challenge to the government's argument that some, if not all, of the predicates are crimes of violence under § 924(c)'s force clause.  *See, e.g., In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) (holding that second-degree retaliatory murder is a crime of violence and stating that "[c]ommon sense dictates that murder is categorically a crime of violence under the force clause"); *United States v. Machado-Erzo*, 986 F. Supp.2d 39, 53-54 (D.D.C. 2013) (rejecting motion for acquittal on § 924(c) charge  relating to a murder; murder "is a crime of violence because it is a felony that requires the use, attempted use, or threatened use of physical force against another person"); *United States v. Moreno-Aguilar*, 198 F. Supp.3d 548, 550 (D. Md. 2016) (holding that murder under § 924(j), as defined by § 1111, is a crime of violence under § 924(c)'s force clause; observing that *Johnson* left unscathed" ACCA's "force clause" and noting that § 924(c)'s "force clause" was "identical to ACCA's"); *United States v. Checora*, 155 F. Supp.3d 1192, 1197, 1201 (D. Utah 2015) (holding that federal second-degree

and attempted murder statutes are crimes of violence under § 924(c)'s force clause and observing that "[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed").

Thus, the defendant's *Johnson* claim, now supplemented with the Supreme Court's holding in *Davis*, is meritless.  Accordingly, this claim should be summarily denied.

> ### 2.      The District Court's Decision in *United States v. Georgescu*, 723 F. Supp. 912 (E.D.N.Y. 1989) Does Not Invalidate the Defendant's Conviction for Attempt to Commit Air Piracy.

The defendant repeats his challenge to his Attempt to Commit Air Piracy conviction based upon *Lopez* and *Mena*, responded to by the government, *supra*, and cites an additional court decision, *United States v. Georgescu*, 723 F. Supp. 912 (E.D.N.Y. 1989).   Defendant's Supplemental Reply, at 14-16.  In *Georgescu*, the defendant, a Romanian national, was charged with committing a criminal sexual act in the special aircraft jurisdiction of the United States, based upon his assault on a minor, a Norwegian national, during a trans-Atlantic flight of a Scandinavian Airlines aircraft *en route* from Copenhagen, Denmark to New York.  The case involved the application of the special aircraft jurisdiction provision to foreign aircraft, clearly a different context than the defendant's criminal acts on board Pan Am Flight 73, a United States air carrier. The page of the opinion cited by the defendant simply begins the discussion of how the statutory language was created to cover foreign aircraft.  Most of the opinion discusses the legislative history of the air piracy statute as it expanded to cover crimes committed on board foreign aircraft outside the United States.  *See* 723 F. Supp. at 914-18.  The holding in *Georgescu* in no way requires a different result in the defendant's case, which involved a United States aircraft.  Interestingly, the *Georgescu* court did note that "[t]he phrase 'if committed within the special maritime and territorial jurisdiction' in section 1472(k)(1) does not establish an element of the offense.  It

indicates that the acts made illegal by our laws when committed in the special maritime and territorial jurisdiction are also made illegal if committed in the special aircraft jurisdiction." *Id.* at 914. Notably, in a later portion of the opinion, the district court addressed the defendant's contention that the creation and application of "special aircraft jurisdiction" was unconstitutional. The district court reasoned that the provision was properly enacted by Congress in the exercise of numerous Constitutional authorities (the commerce clause, the necessary and proper clause, the authority to define and punish piracies and felonies committed on the high seas and offenses against the law of nations). *Id.* at 918-21. Thus, this decision completely fails to support the defendant's challenge to his conviction for Attempt to Commit Air Piracy in the special aircraft jurisdiction of the United States.

C.      **The Arguments the Defendant Raises in His Supplement to Motion to Dismiss [Dkt. 170] are Meritless and Should be Summarily Denied.**

1.      **The Defendant's Request for Equitable Tolling Should be Denied.**

In his Supplement to Motion to Dismiss, the defendant again requests that the Court apply the doctrine of equitable tolling and excuse the late-filing of his § 2255 motion beyond the one-year period of limitations prescribed by 28 U.S.C. § 2255(f). Defendant's Supplement, at 4-5. In his Reply, filed by counsel on May 21, 2018, the defendant requested that the limitations period be equitably tolled.[2] Defendant's Reply, at 9-10. In its Surreply, filed on September 12, 2018, the government opposed the application of the doctrine of equitable tolling because the defendant's

---

[2]      Specifically, the defendant's explanation was that "the same mental state that kept him from understanding his plea agreement and plea proceedings and rendered him incompetent at the time he pled guilty" in 2003 have "persisted in keeping him unable to knowingly and unintelligently [sic] appreciate what he had done when he pled guilty until just recently" Defendant's Reply, at 9. The defendant further attempted to justify his failure to file a timely § 2255 motion on grounds that he has been imprisoned in facilities that are "fairly isolated," he is a "foreign national whose native language is Arabic," and he "has no prior knowledge of even the basics of American law." *Id.*

explanation for his late-filing did not come close to establishing "extraordinary circumstances" that made it "impossible" for him to file a timely § 2255 motion.   *See* Government's Surreply, at 22-25.  The government also noted its opposition to the defendant's motion to expand the record. *See Id.*, at 20-21.

Since then, the defendant has filed under seal a Motion for Leave to Expand the Record [Dkt. 166], and an accompanying Exhibit containing 63 pages of "selected medical, psychiatric, and medical records."  The defendant now asserts that these records "elaborate on and support the arguments that he makes in his Reply regarding equitable tolling."  Defendant's Supplement, at 4. The defendant points to nothing specific in these records – which consist of medical records from 2004 when the defendant was in custody of the D.C. Jail, and records from 2008, 2011, 2013, and 2014 from the Bureau of Prisons – to support his claim.  Instead, it appears that he expects the Court to ferret out the necessary information, which the Court should decline to do.  *See, e.g.*, *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").  The government notes that the records do show that the defendant, at times, was "depressed," "sad," "devastated," and "irritable." These are all understandable emotions for a person incarcerated and serving a life sentence.  However, these additional records do not establish "extraordinary circumstances" that made it "impossible" for him to file a timely § 2255 motion.

### 2.      The Claims Raised by the Defendant in his Supplement to Motion to Dismiss Present No New Arguments.

Even if the Court were to determine that equitable tolling applies, the defendant's claims are meritless and should be summarily denied.  In his Supplement to Motion to Dismiss, filed by counsel, the defendant raises a number of arguments that all stem from his assertion that his guilty

plea to the charge of Attempt to Commit Air Piracy, in violation of 18 U.S.C. App. § 1472(i) (Count 8), was not knowing and voluntary because the Court lacked jurisdiction over that offense because the aircraft was not in flight.  The defendant does not claim that his guilty plea was infirm with respect to any of the other 94 counts to which he pled guilty.  The defendant's challenges to his guilty plea to Count 8 are as follows:

- The defendant asserts that he is "actually innocent of what he was pleading guilty to—an attempted aircraft piracy resulting in death occurring within the special aircraft jurisdiction of the United States," because the government's written proffer of facts and the government's oral proffer verbalized by the prosecutor during the defendant's December 16, 2003 plea hearing "both describe conduct that constitutes the completed offense of aircraft piracy."  Defendant's Supplement, at 6-11;

- The defendant asserts that his due process rights were violated because he pled guilty to a charge – Attempt to Commit Air Piracy – over which the Court had no jurisdiction. Defendant's Supplement, at 11-12;

- The defendant asserts that his guilty plea was taken in violation of Rule 11 because he pled guilty to a charge that did not apply to his conduct due to "jurisdictional concerns." Defendant's Supplement, at 12-13;

- The defendant asserts that his plea counsel were constitutionally ineffective because they "failed to advise him that the plea arrangement he was entering into included admitting a charge for which there could be no jurisdiction and of which he was therefore innocent." Defendant's Supplement, at 13-14.  He further argues that "if [his] attorneys had made an issue of the fact that there could be no jurisdiction for the charge, there is a reasonable probability that, at the least, a better plea arrangement would have been worked out—likely one that did not include that charge."  *Id.* at 14;

- The defendant asserts that the portion of his plea agreement where he agreed to waive his right to mount a collateral attack is unenforceable and not a bar to raising his claim because there was no jurisdiction for the charge of Attempt to Commit Air Piracy.  Defendant's Supplement, at 14-15;

- The defendant asserts that his procedural default – failure to challenge his guilty plea on appeal on grounds of knowing and voluntariness – should be excused because his "severe depression" establishes "cause."  Defendant's Supplement, at 15-17.  He also asserts that he has established "prejudice" because "he will be saddled forever with a plea that does not comport with due process and the Sixth Amendment, that was taken in violation of Rule 11, and that resulted in him being convicted of an offense he was innocent of."  *Id.*;

- The defendant asserts that if the Court determines that relief is not available to him pursuant to § 2255 due to "procedural reasons," such as untimeliness or procedural default, he

should be permitted to seek the same relief pursuant to a petition for a writ of *coram nobis*. Defendant's Supplement, at 17-18.

Many of these claims (the second, third, fifth and sixth) are attempts by the defendant to repackage his previous claim that the Court lacked subject matter jurisdiction over Count 8, the charge of Attempt to Commit Air Piracy, because Pan Am Flight 73 was not in flight at the time he and four other armed men attempted to seize control of the aircraft and executed and/or wounded its passengers and crew. The government responded to this argument in its Omnibus Opposition [Dkt. 151], at 21-25; its Surreply [Dkt. 162], at 5-6; and in the preceding pages of the instant filing. As explained in these various pleadings, the Court did not lack jurisdiction over Count 8 because 49 U.S.C. App. § 1472(i), in effect on September 5, 1986, the date the defendant and his co-defendants attempted to hijack Pan Am Flight 73 on the tarmac in Karachi, Pakistan, did not require that an aircraft be in flight. Accordingly, the government will not repeat those arguments here. As for the defendant's remaining arguments, the government responds below.

### 3.   Defendant's Argument That He Pled Guilty to a Completed Air Piracy, not to the Crime of Attempt to Commit Air Piracy, is Meritless and Refuted By the Record.

The defendant argues that "the written proffer that the government submitted in connection with Mr. Safarini's plea hearing and the oral proffer that it made at that hearing both describe conduct on Mr. Safarini's part that clearly fits the definition of the type of conduct that constitutes the completed offense of aircraft piracy under § 1472(i)(2)." Defendant's Supplement, at 7-8. The defendant goes on to explain that because the government's proffer included facts that the defendant and his confederates "actually seized control" of Pan Am Flight 73, he committed a completed Air Piracy, thus requiring that the aircraft be in flight. *Id.* In essence, he argues that his attempt conviction should be vacated because it was based upon evidence of the consummated offense. As one court noted, "This result, however, presents the anomalous situation of a defendant

going free 'not because he was innocent, but for the very strange reason that he was too guilty.'"

*United States v. Fleming*, 215 A.2d 839, 840-41 (D.C. 1966) (citing *State of Connecticut v. Shepard*, 7 Conn. 54 (1828)).

The record makes clear that the defendant was pleading guilty to the charge of Attempt to Commit Air Piracy, not to a completed Air Piracy.  First, Appendix B to the Plea Agreement [Dkt. 118], that the defendant signed on October 21, 2003, listed the elements of that charge:

> 49 U.S.C. App. § 1472(i) (1982): Attempt to Commit Air Piracy Resulting in Death (Count 8)
>
> The elements to be admitted or proven beyond a reasonable doubt are:
>
> 1) that the defendant unlawfully **attempted** to seize or exercise control of an aircraft, that is, Pan Am Flight 73;
>
> 2) that the defendant used force or violence or threat of force or violence or any other form of intimidation;
>
> 3) that Pan Am Flight 73 was an aircraft in the special aircraft jurisdiction of the United States at the time of the **attempted** seizure;
>
> As relates to the facts of this case, the term "special aircraft jurisdiction of the United States" includes a "civil aircraft of the United States ... while that aircraft is in flight, which is from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the aircraft and for the persons and property aboard."
>
> Under Title 49, United States Code, "[a]n **attempt** to commit aircraft piracy shall be within the special aircraft jurisdiction of the United States **even though the aircraft is not in flight at the time of such attempt** if the aircraft would have been within the special aircraft jurisdiction of the United States had the offense of aircraft piracy been completed."
>
> 4) that the defendant acted with wrongful intent and acted knowingly, voluntarily and purposely and not because of mistake, inadvertence or accident; and
>
> 5) that the deaths of Rajesh N. Kumar and Surendra M. Patel and of other persons resulted from the defendant's attempted commission of this offense.

[Dkt. 118, Plea Agreement, at 16] (emphasis added).  Thus, the defendant acknowledged (among other things) that he committed the first and third elements of Attempt to Commit Air Piracy, that is, that he "**attempted** to seize or exercise control" over Pan Am Flight 73 and that the aircraft was "in the special aircraft jurisdiction of the United States at the time of the **attempted** seizure." (emphasis added).  During the plea colloquy, the defendant also acknowledged that he had reviewed the elements of each charge with his attorneys, that he had no questions about any of the elements, and that he did not want the Court to go over the elements with him during the plea hearing (12/16/03 Tr. 19-20).  Therefore, the defendant's claim that he pled guilty to a completed air piracy is utterly meritless and should be summarily denied.

### 4.    The Defendant's Ineffective Assistance of Counsel Claim Fails.

The defendant asserts that his plea counsel were constitutionally ineffective because they "failed to advise him that the plea arrangement he was entering into included admitting a charge for which there could be no jurisdiction and of which he was therefore innocent."  Defendant's Supplement, at 13-14.  He further argues that "if [his] attorneys had made an issue of the fact that there could be no jurisdiction for the charge, there is a reasonable probability that, at the least, a better plea arrangement would have been worked out—likely one that did not include that charge." *Id.* at 14.  Because the defendant's claims relating to the charge of Attempt to Commit Air Piracy are meritless, plea counsels' performance was not constitutionally ineffective.

To establish ineffective assistance of counsel, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient performance must fall "below an objective standard of reasonableness." *Id.* at 688.  Prejudice requires a "reasonable probability" that, but for the deficient performance, "the result of the proceeding would have been different."

*Id.* at 694.  In the context of an ineffectiveness claim after defendant has pled guilty, the prejudice inquiry is founded in part on the recognition that the government's substantial interest in the finality of guilty pleas would be undermined if it were too easy for defendants seeking a better outcome to challenge a guilty plea after the fact.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Premo v. Moore*, 562 U.S. 115, 132 ((2011) ("[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place"); *United States v. Timmreck*, 441 U.S. 780, 784 (1979) ("the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas").

It is well-settled that the failure to raise a meritless objection is not deficient performance. *See United States v. Marshall*, 936 F.3d 591, 596 (D.C. Cir. 2020); *United States v. Islam*, 932 F.3d 857, 864 (D.C. Cir. 2019); *United States v. Sitzmann*, 893 F.3d 811, 833 (D.C. Cir. 2018) (*per curiam*).  Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim.  *Strickland*, 466 U.S. at 700. Consequently, the reviewing court need not even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.  Hence, the Court need not reach or consider the issue of prejudice if the Court finds that the defendant has not shown deficient performance.  Here, because the Court did not lack subject matter jurisdiction over Count 8, counsels' alleged failure to advise the defendant that the Court lacked jurisdiction over that charge was not deficient performance.  It follows that because the Court had jurisdiction over the Attempt to Commit Air Piracy charge, the defendant cannot show that there was a reasonable probability of a different result, that is, that the government would have extended a plea offer that did not include that charge.

**5.    The Writ of *Coram Nobis* is Not Available to the Defendant Because He is in Custody.**

Alternatively, the defendant argues that if the Court concludes that § 2255 is not available to him "for procedural reasons such as procedural default or untimeliness," he should be permitted to bring his claims pursuant to a petition for a writ of *coram nobis*.  Defendant's Supplement, at 17-18.  Simply put, the defendant is not entitled to use *coram nobis* as a vehicle for relief because he is in custody.  A petition for a writ of *coram nobis* is "an extraordinary remedy" that allows criminal defendants to attack their convictions after they are no longer in custody.  *United States v. Morgan*, 346 U.S. 502, 511 (1954); *see also United States v. Faison*, 956 F.Supp.2d 267, 269 (D.D.C. 2013); *Stoller v. United States*, 216 F. Supp.3d 171, 174 (D.D.C. 2016); *see also Moon v. United States*, 272 F.2d 530, 531 (D.C. Cir. 1959) (defendant sought *coram nobis* relief where he was seeking relief in a case where he had not yet begun serving that sentence, but was serving a sentence in a different case); *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (stating that *coram nobis* relief is typically viewed as "a remedy of last resort" for petitioners who are no longer in custody pursuant to a criminal conviction).  The modern writ of *coram nobis* allows a trial court to correct its own legal or factual errors, as it provides "an extension of the original proceeding during which the error allegedly transpired."  *United States v. Denedo*, 556 U.S. 904, 912–13 (2009).  Because the defendant remains in custody in this case, his attempt to use a petition for a writ of *coram nobis* as grounds for relief should be denied.

**WHEREFORE**, the government respectfully requests the Court to summarily deny the defendant's motions:  1) *pro se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest, filed on April 21, 2020 [Dkt. 168]; 2) *pro se* Motion for Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of the United States Without Amending the Pleadings But in Support of the Original Filings

Now Showing that With Support of the Supreme Court Decisions the District Court Lacked

Subject Matter Jurisdiction and Personal Jurisdiction of the Petitioner and as a Result the Plea

Agreement Should be Vacated and Judgment Set Aside and Manifest of Injustice be Corrected

[Dkt. 169];  3) Supplement to Motion to Dismiss; and 4) all pending post-conviction motions filed

in this this case.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
N.Y. Bar Number 4444188

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403

_____/s/_____
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar Number 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, this 5th day of August, 2020, I caused a copy of the foregoing
Opposition to be served via ECF on counsel of record, Jerry Ray Smith, Esquire.

___/s/_____
Pamela S. Satterfield
Assistant United States Attorney