**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

v.

ZAYD  HASSAN  ABD  AL-LATIF
MASUD AL SAFARINI,

                    Defendant.

---

Crim. Action No. 91-504-3
(EGS)

---

**MEMORANDUM OPINION**

**I.    Introduction**

     Defendant Zayd Hassan Abd Al-Latif Safarini ("Mr. Safarini"
or "Defendant") pled guilty to 95 counts related to the
attempted hijacking of Pan Am Flight 73 in Pakistan on September
5, 1986. *See* Plea Agreement, ECF No. 118 at 1.[1] He was sentenced
to three consecutive life sentences, plus 25 years. *See*
Judgment, ECF No. 125 at 4. Mr. Safarini seeks to set aside or
correct his sentence, pursuant to 28 U.S.C. § 2255. *See*
*generally* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or
Correct Sentence by a Person in Federal Custody ("§ 2255
Motion"), ECF No. 141.

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

1

Through an extensive set of post-conviction filings, Mr. Safarini makes several arguments in favor of setting aside his guilty plea. First, he asks the Court to vacate his conviction for Use of a Firearm During a Crime of Violence, charged pursuant to 18 U.S.C. § 924(c) (Count 95), arguing that the crime of Attempt to Commit Air Piracy Resulting in Death, charged pursuant to 49 U.S.C. App. § 1472(i), is not a "crime of violence" based upon the Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2551, 2560 (2015), and *United States v. Davis*, 139 S. Ct. 2319, 2321 (2019)(hereinafter, referred to as the *Johnson* motion). *See* § 2255 Motion, ECF No. 141 at 2. Second, he asks the Court to vacate his conviction for Attempt to Commit Air Piracy Resulting in Death, charged pursuant to 18 U.S.C. App. § 1472(i) (Count 8), arguing that the Court lacked jurisdiction over the attempted air piracy charge because the aircraft was not in flight at the time that he committed the crimes. *See* Motion to Dismiss Counts of the Indictment ("Def.'s Suppl."), ECF No. 145 at 8-9. Third, Mr. Safarini claims that the Court lacked jurisdiction to sentence him on the counts involving Murder of a United States National Outside the United States, charged pursuant to 18 U.S.C. § 2331(a)(1) (Counts 3 and 4), because that statute purportedly was not in effect at the time he committed the crime. *See id.* at 10. Fourth, he claims that his plea agreement is void for several reasons, including

the violation of his due process rights and Rule 11, as well as ineffective assistance of counsel. *See* Suppl. to Mot. to Dismiss ("Def.'s Fourth Suppl."), ECF No. 170 at 11-14.

In support of his ability to bring the § 2255 challenges, Mr. Safarini makes a set of procedural arguments. First, he argues that his waiver of the right to raise a collateral attack in his plea agreement is unenforceable because there was no jurisdiction for the charge of Attempt to Commit Air Piracy. *See id.* at 14-15. Second, he argues that his procedural default—failure to challenge his guilty plea on appeal on grounds of knowingness and voluntariness should be excused because his "severe depression" establishes "cause." *Id.* at 15-17. Third, he requests that the Court apply the doctrine of equitable tolling and excuse the late filing of his § 2255 motion. *See id.* at 4-5. Fourth, he suggests that if the Court determines that relief is not available to him pursuant to § 2255 due to "procedural reasons," such as untimeliness or procedural default, he should be permitted to seek the same relief pursuant to a petition for a writ of *coram nobis*. *Id.* at 17-18.

Pending before the Court are: (1) Def.'s § 2255 Motion, *see* ECF No. 141; (2) Def.'s Suppl., ECF No. 145; (3) *pro se* Motion to Clarify and Narrow the Issue Before this Court and Move for Expedited Decision/Emergency Petition Immediate Liberty Interest ("Def.'s Second Suppl."), *see* ECF No. 168; (4) *pro se* Letter for

Leave to Amend a Supplemental Reply to the Omnibus Sur-Reply of
the United States Without Amending the Pleadings But in Support
of the Original Filings Now Showing that With Support of the
Supreme Court Decisions the District Court Lacked Subject Matter
Jurisdiction and Personal Jurisdiction of the Petitioner and as
a Result the Plea Agreement Should be Vacated and Judgment Set
Aside and Manifest of Injustice be Corrected ("Def.'s Third
Suppl."), which the Court construes as a motion, *see* ECF No.
169; and (5) Def.'s Fourth Suppl., ECF No. 170. Upon
consideration of the motions, responses, and the replies
thereto, the applicable law and regulations, the entire record
and the materials cited therein, the Court **DENIES** all five
motions.

## II.  Factual and Procedural Background

### A. Factual Background

On September 5, 1986, Mr. Safarini, along with a group of
co-conspirators, attempted to hijack Pan American Flight 73, en
route from Karachi, Pakistan, to Frankfurt, Germany with
approximately 379 passengers and 78 U.S. Citizens on board.
*United States v. Safarini*, 257 F. Supp. 2d 191, 193 (D.D.C.
2003). Four men, including Mr. Safarini, seized control of the
aircraft while it was on the tarmac boarding passengers. *Id.* The
pilot, co-pilot and engineer escaped while the hijackers were
taking control of the aircraft, thereby grounding the plane. *Id.*

After having seized control, Mr. Safarini instructed flight attendants to procure the passports of those aboard the plane, specifically to identify American citizens. *Id.* He then demanded that a cockpit crew be provided to fly the plane to Cyprus and threatened to kill passengers one by one to coerce authorities. *Id.* To emphasize the seriousness of his request, he then held a passenger, Rajesh N. Kumar, a United States national, at gunpoint, shot him in the head, and threw his body from the aircraft onto the tarmac. *Id.* Following Mr. Kumar's murder, radio communications were established between the plane and the control tower, and Mr. Safarini began negotiations on behalf of the hijackers with Pakistani authorities. *Id.*

Later that day, when the auxiliary power unit supplying power to the plane failed, the hijackers herded the passengers and crew members into the center of the aircraft. *Id.* Mr. Safarini, alongside his co-conspirators, then opened fire on the aircraft's passengers with assault rifles and pistols, and detonated hand grenades into the crowd. *Id.* Nineteen passengers were killed during the assault, including a second American citizen, Surendra Patel. *Id.* More than one hundred other passengers were seriously injured. *Id.*

### B. Procedural Background

#### 1. Original Conviction

Mr. Safarini was tried jointly with his four co-defendants in Pakistan in 1987 for charges arising from the events described above. *Safarini*, 257 F. Supp. 2d at 194. Each defendant was convicted and sentenced to death, though each sentence was subsequently commuted to a life sentence. *Id.* Mr. Safarini, however, was released on September 27, 2001, after being imprisoned for approximately 15 years; and the Federal Bureau of Investigation ("FBI") subsequently captured him as he was traveling to Jordan.[2]

On August 29, 1991, a 126-count indictment against Mr. Safarini had been returned under seal by a grand jury in the United States District Court for the District of Columbia. *See generally* Indictment, ECF No. 1. On August 28, 2002, following Mr. Safarini's capture by the FBI, a grand jury returned a superseding indictment charging Mr. Safarini and his four co-defendants with ninety-five federal offenses. *See generally*, Superseding Indictment, ECF No. 26. On December 16, 2003, Mr. Safarini pled guilty to all ninety-five charges pursuant to a plea agreement. *See* Plea Agreement, ECF No. 118 ¶ 1. He was

---

[2] In 2008, the Pakistani authorities released the remaining four defendants from custody and they are currently on the FBI's Most Wanted Terrorists List. *See* Gov't's Omnibus Opp'n, ECF No. 151 at 2.

represented by Robert Tucker, Esquire, of the Office of the
Federal Public Defender for the District of Columbia, and
private counsel, David Bruck, Esquire. *See id.* at 1. The counts
of conviction included charges of murder, attempted murder,
attempted air piracy, hostage-taking, and conspiracy to commit
offenses against the United States. *See id.* ¶ 4.

Under the terms of the agreement, the government agreed
that it would not seek the death penalty, and the parties agreed
that the appropriate sentence was three consecutive life
sentences, plus 25 years. *See* Plea Agreement, ECF No. 118 ¶¶ 4,
12. In addition, pertinent to several of the claims Mr. Safarini
now raises, the plea agreement included the following provision:

> Your client also voluntarily and knowingly
> waives your client's right to challenge the
> sentence or manner in which it was determined,
> or the plea itself, in any collateral attack,
> including but not limited to a motion brought
> under Title 28, United States Code, Section
> 2255. Your client understands that, under
> legal ethical rules, you are not permitted to
> advise your client to waive any claims of
> ineffective assistance of counsel against you
> and, therefore, this waiver does not include
> any such claims of ineffective assistance of
> counsel against you.

Plea Agreement, ECF No. 118 ¶ 20. This Court accepted the
parties' Rule 11(c)(1)(C) plea agreement and sentenced Mr.
Safarini to the agreed-upon sentence. *See* Minute Entry, May 13,
2004. The Court entered the judgment on May 24, 2004. *See*

Judgment, ECF No. 125. Mr. Safarini did not note an appeal. *See generally* Docket for Criminal Action No. 91-504-3.

### 2. Post-Conviction Proceedings

Approximately twelve years later, Mr. Safarini began to collaterally attack his convictions. First, on or about June 18, 2016, he mailed to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") two *pro se* motions: (1) a § 2255 motion; and (2) a Motion Under 28 U.S.C. § 2244 for Order Authorizing the District Court to Consider Second or Successive Application for Relief Under 28 U.S.C. § 2255 ("§ 2244 motion"), *see* Petition, United States Court of Appeals for the District of Columbia ("D.C. Circuit") Docket #16-3094. In his § 2255 motion, Mr. Safarini asserted that his conviction relating to the § 924(c) firearms offense (Count 95) must be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See generally* § 2255 Motion, ECF No. 141. On August 5, 2016, the Federal Circuit transferred these motions to the D.C. Circuit. *See* D.C. Circuit, Docket #16-3094.

On September 19, 2016, the government requested that the D.C. Circuit transfer the two motions to this Court because the § 2255 motion was not "second or successive." *See* Gov't's Omnibus Opp'n, ECF No. 151 at 5. On October 17, 2016, Mr. Safarini's § 2255 and § 2244 motions were transferred to this Court. *See* Notice, ECF No. 138. On February 14, 2017, Mr.

Safarini filed with this Court a copy of his § 2255 motion that had been previously sent to the Federal Circuit. *See* § 2255 Motion, ECF No. 141.

While Mr. Safarini's § 2255 and § 2244 motions were being filed elsewhere and transferred to this Court, on August 29, 2016, he filed in this Court a *pro se* Motion to Dismiss Conviction and Indictment Because District Court Lacked Jurisdiction to Try this Case, *see* ECF No. 136. The Court directed the government to file a response. *See* Minute Order, January 29, 2017. On February 17, 2017, Mr. Safarini filed a motion to withdraw his motion to dismiss, asserting that it did not "represent the arguments and case law [he] wish[ed] to argue" and indicating that he planned to file another motion at a later date "to address the true essence of jurisdiction that [he] wish[ed] to argue." Mot. to Dismiss, ECF No. 142. On February 27, 2017, the government filed its Opposition to Mr. Safarini's *pro se* motion, even though Mr. Safarini had moved to withdraw that motion. *See* Resp. to Mot., ECF No. 144.

On February 28, 2017, Mr. Safarini filed a revised *pro se* Motion to Dismiss Counts of the Indictment Under Titles 18 U.S.C. §§ 2331 and 844(i), Titles 49 U.S.C. App. § 1472 and 49 U.S.C. § 46502 and Void Plea Agreement for Lack of Jurisdiction ("Def.'s Suppl."), *see* ECF No. 145. The Court subsequently granted Mr. Safarini's motion to withdraw his initial *pro se*

Motion to Dismiss. *See* Minute Order, April 12, 2017. The Court further ordered the government to respond to Mr. Safarini's § 2255 motion and to his revised February 28, 2017, motion to dismiss. *See id.*

On September 12, 2017, the government filed its Omnibus Opposition to Mr. Safarini's *pro se* motions. *See* Gov't's Omnibus Opp'n, ECF No. 151. The Court subsequently appointed counsel, Jerry Ray Smith, Esquire, to represent him. *See* Minute Order, September 21, 2017. On May 21, 2018, Mr. Safarini, through counsel, filed a Reply to the government's Omnibus Opposition. *See* Reply, ECF No. 159. On September 12, 2018, the government filed its Surreply. *See* ECF No. 162.

On September 21, 2018, Mr. Safarini's counsel filed a Motion to Stay Post-Conviction Proceedings, pending the receipt of certain medical records, *see* ECF No. 163; which the Court granted, *see* Minute Order, October 3, 2018. On February 11, 2020, Mr. Safarini's counsel filed a Motion to Lift Stay and Set Deadlines for Filing Supplement to Post-Conviction Pleading, *see* ECF No. 164. On April 13, 2020, Mr. Safarini's counsel filed a Motion for Leave to Expand the Record Under Seal, with attachments, and an accompanying Motion for Leave to File Motion Under Seal, *see* ECF No. 166.

On April 21, 2020, Mr. Safarini filed *pro se*: (1) Def.'s Second Suppl., *see* ECF No. 168; and (2) Def.'s Third Suppl., *see*

ECF No. 169. On May 12, 2020, Mr. Safarini's counsel filed a supplement to Mr. Safarini's Motion to Dismiss, *see* Def.'s Fourth Suppl., ECF No. 170.[3] The government opposed all three filings in an omnibus response. *See* United States' Opp'n to Def.'s Suppl. and Other Filings ("Gov't's Second Opp'n"), ECF No. 172. Mr. Safarini's counsel filed a reply on September 2, 2020. *See* Reply ("Second Reply"), ECF No. 173. The motions are ripe and ready for adjudication.[4]

---

[3] As the government points out, the jurisdictional claims raised in the defendant's motion to dismiss, which are challenges to the validity of his underlying convictions, are properly raised pursuant to § 2255. Therefore, the defendant's motion to dismiss is construed by the Court as an amendment to his previously filed § 2255 motion because of the nature of the claims the defendant raises and the relief he seeks. *See, e.g.*, *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) ("[I]n general, when a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion); *Williams v. Gonzalez*, 567 F. Supp. 2d 148, 149 (D.D.C. 2008) (court "not bound by a *pro se* litigant's characterization of his course of action. Rather a court must determine the proper characterization of a filing by the nature of the relief sought."); *United States v. Palmer*, 296 F.3d 1135, 1145 (D.C. Cir. 2002) (*pro se* pleadings should be construed based upon the nature of the relief sought, not the caption the defendant has attached to his pleading).

[4] Although transferred to this Court, the Court does not address Mr. Safarini's § 2244 motion since his § 2255 motion is not "second or successive." *See* Notice, ECF No. 138.

## III. Standards of Review

### A. § 2255 Motion

Under 28 U.S.C. § 2255, a defendant may move the sentencing court to vacate, set aside, or correct a sentence if the defendant believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The relief envisaged by § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). "Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a [§] 2255 motion." *Bedewi v. United States*, 583 F. Supp. 2d 72, 76 (D.D.C. 2008) (internal quotation marks omitted).

A defendant bears the burden of demonstrating that he is entitled to relief under § 2255. *See, e.g.*, *United States v. Bell*, 65 F. Supp. 3d 229, 231 (D.D.C. 2014). To obtain collateral relief under § 2255, it is "well-settled" that "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584 (1982); *see also United States v. Pollard*,

959 F.2d 1011, 1020 (D.C. Cir. 1992) ("[I]n a § 2255 collateral challenge, [a defendant], in order to gain relief under any claim, is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence."). "Society's interest in bringing criminal appeals to an end is the reason for the high standard for relief in a collateral proceeding." *Pollard*, 959 F.2d at 1029.

For claims other than ineffective assistance of counsel, a defendant's failure to raise an available claim on direct appeal amounts to procedural default, and bars him from raising the claim in a subsequent collateral attack, unless he shows cause for his prior failure to raise the claim and prejudice because of it. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998); *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003); *Brodie v. United States*, 626 F. Supp. 2d 120, 123 (D.D.C. 2009). To show cause, a defendant must establish "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim," such as government interference or that the factual or legal basis for the claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94, 111 S. Ct. 1454 (1991) (internal quotation marks omitted). In addition, the defendant must show "'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168.

**B. Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)). To succeed on an ineffective-assistance claim, a defendant must show both deficient performance by his attorney and prejudice. *Strickland*, 466 U.S. at 687. *Strickland* requires a party claiming ineffective assistance of trial counsel to show that: (1) "counsel's representation fell below an objective standard of reasonableness ... [measured] under prevailing professional norms," (the performance prong); and (2) the "deficiencies in counsel's performance...[were] prejudicial to the defense" (the prejudice prong). *Id.* at 668, 687-88, 692. To establish deficient performance, the moving party must show "specific errors by trial counsel." *United States v. Cronic*, 466 U.S. 648, 666, 104 S. Ct. 2039 (1984). To establish prejudice, the moving party must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

14

**C. Timeliness of Ineffective Assistance of Counsel Claims**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) statute of limitations applies to the filing of § 2255 claims. *Holland v. Fla.*, 560 U.S. 631, 130 S. Ct. 2549, 2552 (2010). Absent a narrow set of circumstances, a defendant must file a § 2255 motion within one year of the date on which his conviction becomes final.[5] *See Dodd v. United States*, 454 U.S. 353, 357 (2005) (recognizing that "[i]n most cases, the operative date from which the limitation period is measured will be . . . the date on which the judgment of conviction becomes final."). That date is measured by "the conclusion of direct review or the expiration of the time for seeking such review." *United States v. Shelton*, 539 F. Supp. 2d 259, 266-67 (D.D.C. 2008).

---

[5] The one-year limitation period runs from the latest of:
    (1)  the date on which the judgment of conviction becomes final;
    (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
    (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Claims filed beyond the one-year limitation are timely if they relate back to the timely claims, meaning that they "arise from the same core facts as the timely filed claims, and not [if] the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 645, 125 S. Ct. 2562 (2005) (internal quotation marks omitted). The Federal Rules of Civil Procedure establish that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .." Fed. R. Civ. P. 15(c)(2).

However, in certain cases, the AEDPA statute of limitations is subject to equitable tolling. *Holland*, 560 U.S. at 649. To warrant equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.*

**IV.  Analysis**

Through his various post-conviction filings, Mr. Safarini presents the following arguments to vacate his convictions. First, he claims that the crime of Attempt to Commit Air Piracy Resulting in Death, charged pursuant to 49 U.S.C. App. § 1472(i), is not a "crime of violence" based upon the Supreme

Court's decisions in *Johnson*, 135 S. Ct. at 2560, and *Davis*, 139 S. Ct. at 2321. *See* § 2255 Motion, ECF No. 141 at 2. Second, he argues that the Court lacked jurisdiction over the attempted air piracy charge because the aircraft was not in flight at the time he committed the crimes. *See* Def.'s Suppl., ECF No. 145 at 8-9. Third, Mr. Safarini argues that the Court lacked jurisdiction to sentence him on the counts involving Murder of a United States National Outside the United States, charged pursuant to 18 U.S.C. § 2331(a)(1) (Counts 3 and 4), because that statute purportedly was not in effect when he committed the crime. *See id.* at 10. Fourth, he brings a set of claims derivative of his air piracy jurisdiction argument, asserting that his plea agreement violated his due process rights and Rule 11 since "he was unaware that there could be no jurisdiction for the attempted-aircraft-piracy-resulting-in-death charge he was admitting and that he was therefore actually innocent of that charge," and that he consequently received ineffective assistance of counsel. *See* Def.'s Fourth Suppl., ECF No. 170 at 11-14. Finally, he asserts that his counsel was also ineffective because "it was objectively unreasonable of his counsel not to raise the issue of his competency prior to allowing him to enter into the plea agreement." Def.'s Reply, ECF No. 159 at 7.

On the merits, the government responds that: (1) the decisions in *Davis* and *Johnson* do not invalidate Mr. Safarini's

§ 924(c) conviction, *see* Gov't's Second Opp'n, ECF No. 172 at 9-12; (2) the Court did not lack jurisdiction over the attempted air piracy conviction because the aircraft was not required to be in flight, *see id.* at 7-8; (3) Mr. Safarini's "contention that the murder and attempted murder charges were based upon a statute that was not in effect on September 5, 1986, is simply wrong," *see* Gov't's Omnibus Opp'n, ECF No. 151 at 27; (4) his Rule 11 and due process claims "are attempts by the defendant to repackage his previous claim that the Court lacked subject matter jurisdiction over Count 8, the charge of Attempt to Commit Air Piracy," Gov't's Second Opp'n, ECF No. 172 at 15; and (5) his ineffective assistance of counsel claim fails because Mr. Safarini's attorneys "did not have 'reasonable cause' to question his competency, nor were they constitutionally ineffective for failing to raise such an issue," Gov't's Surreply, ECF No. 162 at 13.

The government also presents procedural challenges to Mr. Safarini's claims, arguing that he is precluded from collaterally attacking his conviction and sentence on any grounds except for ineffective assistance of counsel. *See* Gov't's Omnibus Opp'n, ECF No. 151 at 7. The government also argues that Mr. Safarini's plea was knowing and voluntary. *Id.* Finally, the government argues that Mr. Safarini's § 2255 motion is untimely and that no "extraordinary circumstances" exist to

justify equitable tolling. *See* Gov't's Surreply, ECF No. 162 at
23.

In support of his ability to bring his § 2255 challenges,
Mr. Safarini counters that his waiver of the right to raise a
collateral attack in his plea agreement is unenforceable because
there was no jurisdiction for the charge of Attempt to Commit
Air Piracy. *See* Def.'s Fourth Suppl. at 14-15. Second, he argues
that his procedural default—his failure to challenge his guilty
plea on appeal on grounds of knowingness and voluntariness—
should be excused because his "severe depression" establishes
"cause." *Id.* at 15-17. Third, he requests that the Court apply
the doctrine of equitable tolling and excuse the late filing of
his § 2255 motion, also on the basis of his state of mind. *See*
Def.'s Fourth Suppl. at 4-5.

Mr. Safarini further suggests that if the Court determines
that relief is not available to him pursuant to § 2255 due to
procedural reasons such as untimeliness or procedural default,
he should be permitted to seek the same relief pursuant to a
petition for a writ of *coram nobis*. *Id.* at 17-18. The government
counters that the writ of *coram nobis* is not available to Mr.
Safarini because he is in custody. *See* Gov't's Second Opp'n, ECF
No. 172 at 20.

Before addressing the substantive merits of a defendant's
claims, the Court must determine whether those claims are

timely. *United States v. Cicero*, 214 F.3d 199, 202 (D.C. Cir. 2000). Here, the Court must first consider whether Mr. Safarini has the right to bring these claims at all, since he waived the right to collateral attacks in his plea agreement, except for any ineffective assistance of counsel claims. *See* Plea Agreement, ECF No. 118 ¶ 20. Thus, the Court first considers whether Mr. Safarini can bring his § 2255 claims in light of his plea agreement, and then considers the issue of timeliness, before reaching the merits of the argument.

### A. Mr. Safarini's Claims, Other Than Ineffective Assistance of Counsel, Are Barred by His Plea Agreement

In his Motion to Dismiss, Mr. Safarini seeks to void his plea agreement on the grounds that it "was not knowingly and intelligently made" since he was unaware that the Court lacked jurisdiction. *See* Def.'s Suppl., ECF No. 145 at 11. His reply adds a second ground, that he "did not understand or appreciate what he was doing when he pled guilty as a general matter" because he was depressed, "not in his right mind," and received ineffective assistance of counsel. *See* Def.'s Reply, ECF No. 59 at 5-7.

The government responds that Mr. Safarini's claim, "while labeled a challenge to the Court's jurisdiction, is–at best--a challenge to the government's proof with respect to the elements of that crime." Gov't's Omnibus Opp'n, ECF No. 151 at 21. The

government also asserts that the express terms of Mr. Safarini's plea agreement with the government, into which he entered knowingly and voluntarily, preclude him from challenging his convictions on collateral attack on any grounds except ineffective assistance of counsel. *See id.* at 17-21. The Court addresses each argument in turn.

### 1. Mr. Safarini's Attempted Air Piracy Argument Does Not Raise Any Jurisdictional Issues

Mr. Safarini raises jurisdictional issues over his air piracy charge in myriad ways, ranging from a direct argument that his plea agreement is void because his plea was not knowing and voluntary since the Court lacked subject matter, *see* Def.'s Suppl., ECF No. 145 at 11-12; to derivative allegations that: (1) lack of jurisdiction meant that his waiver of a right to mount collateral attacks is unenforceable, *see* Def.'s Fourth Suppl., ECF No. 170 at 14-15; (2) Rule 11 and due process were consequently violated through accepting his plea, *see id.* at 11-12; and (3) that his counsel was ineffective for not challenging the lack of jurisdiction, *see id.* at 13-14. Although presented in different ways, these arguments are all derivative of whether the Court had jurisdiction. Consequently, the Court first addresses whether Mr. Safarini has brought a jurisdictional challenge that could render his plea not knowing or voluntary and surpass the explicit waiver in his plea agreement.

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley,* 523 U.S. at 621 (internal citation omitted). A "voluntary plea of guilty waives all rights and defenses, known or unknown, present or future," except those relating to the Court's jurisdiction. *United States v. Fitzgerald*, 466 F.2d 377, 379 (D.C. Cir. 1972); *see also Brady v. United States*, 397 U.S. 742, 756-57 (1970); *McMann v. Richardson*, 397 U.S. 759, 768-74 (1970); *Parker v. North Carolina*, 397 U.S. 790, 794-98 (1970); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004); *United States v. Drew*, 200 F.3d 871, 876 (D.C. Cir. 2000); *Coleman v. Burnett*, 477 F.2d 1187, 1195 (D.C. Cir. 1973). Where the unambiguous terms of the plea agreement prevent collateral attacks, the defendant cannot challenge his plea or sentence on collateral review via a § 2255 motion. *See, e.g.*, *United States v. Bertram*, 209 F. Supp.3d 243 (D.D.C. 2016) (in pleading guilty, defendant waived right to file § 2255 motion except on the basis of newly discovered evidence or ineffective assistance of counsel; court held that defendant's claims of selective prosecution and actual innocence were barred by express terms of plea agreement); *cf. United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009)

(waivers of right to appeal in plea agreements are generally enforceable).

There are two recognized exceptions to the rule that by pleading guilty, the defendant waives his right to challenge his convictions. *United States v. Miranda*, 780 F.3d 1185, 1188 (D.C. Cir. 2015). First, a challenge to the district court's subject-matter jurisdiction—to the court's power to hear a given case—can never be waived or forfeited. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United States v. Cotton*, 535 U.S. 625, 630 (2002). Second, certain constitutional challenges asserting a "right not to be haled into court at all" cannot be waived through a guilty plea. *Blackledge v. Perry,* 417 U.S. 21, 31 (1974); *Menna v. New York,* 423 U.S. 61, 62-63 n.2 (1975) ("[A] plea of guilty to a charge does not waive a claim that judged on its face-the charge is one which the State may not constitutionally prosecute.").

Here, Mr. Safarini makes two relevant arguments. First, he argues that the Court lacked jurisdiction to sentence him on the counts involving Murder of a United States National Outside the United States, charged pursuant to 18 U.S.C. § 2331(a)(1) (Counts 3 and 4), because that statute purportedly was not in effect when he committed the crime. *See* Def.'s Suppl., ECF No. 145 at 10. Since the government addresses Mr. Safarini's argument about the murder charges only on the merits, the Court

considers the government to have conceded that the argument passes the jurisdictional challenge test.

Second, Mr. Safarini contends that the Court lacked jurisdiction over the attempted air piracy charge because the aircraft was not in flight when he committed the hijacking. *See* Def.'s Suppl., ECF No. 145 at 8-10. The government responds that Mr. Safarini's argument, "while labeled a challenge to the Court's jurisdiction, is-at best--a challenge to the government's proof with respect to the elements of that crime." Gov't's Omnibus Opp'n, ECF No. 151 at 20. The Court agrees.

Persuasive authority holds that to sustain a challenge to the district court's jurisdiction, a defendant who has pleaded guilty must establish that the face of the indictment discloses that the count to which he pleaded guilty failed to charge a federal offense. *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987); *United States v. Santelises,* 476 F.2d 787, 788 (2d Cir. 1973) (*coram nobis* attack on guilty plea based on alleged failure of indictment to allege violations of federal law must be rejected "'unless [the indictment] is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted'") (quoting *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir. 1969))). The "requirement that the alleged jurisdictional defect be apparent from the face of the indictment reflects the line between issues

24

that go to the court's power to entertain the prosecution and
those that go merely to the government's ability to prove its
case." *Hayle*, 815 F.2d at 882. If the indictment "alleges all of
the statutory elements of a federal offense and the defendant's
contention is that in fact certain of those elements are
lacking, the challenge goes to the merits of the prosecution,
not to the jurisdiction of the court to entertain the case or to
punish the defendant if all of the alleged elements are proven."
*Id.*

Mr. Safarini's argument regarding the jurisdictional nature
of the air piracy claim follows a somewhat convoluted path: he
claims that although he was charged with, and pled guilty to,
attempted aircraft piracy, his "conduct actually constituted a
completed aircraft piracy" since "Mr. Safarini and his
confederates actually seized control of the aircraft." Def.'s
Fourth Suppl., ECF No. 170 at 7-8. In 1986, for a charge of
completed aircraft piracy to be within the United States'
special aircraft jurisdiction, the aircraft actually had to be
"in flight" at the time that the conduct occurred. 49 U.S.C.
App. § 1301(38) (1982). In contrast, for attempted aircraft
piracy to be within the United States' special jurisdiction, it
expressly did not have to be in flight; instead, it had merely
to "have been within the special aircraft jurisdiction of the
United States had the offense of aircraft piracy been

completed." 49 U.S.C. App § 1472 (i)(3) (1982). Mr. Safarini argues that since Pan Am Flight 73 was not "in flight," and since he had completed the offense of aircraft piracy, it cannot be said that the attempted aircraft piracy that he pled guilty to "would have been within the special aircraft jurisdiction of the United States had the offense of aircraft piracy been completed." Def.'s Fourth Suppl., ECF No. 170 at 6-7 (citing 49 U.S.C. App § 1472 (i)(3) (1982)).

The Court concludes that this argument "goes to the merits of the prosecution," rather than the Court's ability to hear the issue. *Hayle,* 815 F.2d at 882. Although Mr. Safarini's filings are couched in jurisdictional terms, his underlying contention turns on the element of "seizure or exercise of control." *See* 49 U.S.C. App. § 1472(i)(2) (1982) (defining "aircraft piracy" as "any seizure or exercise of control, by force or violence or threat of force or violence, or by any other form of intimidation, and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States"). His assertions regarding the Court's jurisdiction notwithstanding, Mr. Safarini's argument is whether "[he] and his confederates actually seized control of the aircraft." *See* Def.'s Fourth Suppl., ECF No. 170 at 7. Mr. Safarini himself asserts that having seized control and completed the offense, ""[i]n Flight" *as an element* was required required [sic] in order to be charged

and convicted." Def.'s Suppl., ECF No. 145 at 11-12 (emphasis added).

Moreover, Mr. Safarini's argument amounts to an assertion that he can be charged with neither aircraft piracy, since the plane was not in flight, nor with attempted aircraft piracy because, having *completed* the offense by seizing control on the ground, "the aircraft would [not] have been within the special aircraft jurisdiction of the United States *had the offense of aircraft piracy been completed.*" 49 U.S.C. App § 1472 (i)(3) (1982) (emphasis added). Mr. Safarini seeks to have it both ways-he argues that his conduct "clearly fits the definition of the type of conduct that constitutes the completed offense of aircraft piracy," and simultaneously asserts that *had* he completed the offense, it would have fallen outside the special aircraft jurisdiction of the United States. *See* Def.'s Fourth Suppl., ECF No. 170 at 7-8.

Since Mr. Safarini's argument is whether his actions satisfy the elements of the offense, specifically as related to seizure, he has not brought a jurisdictional challenge. Accordingly, his challenge does not render his plea not knowing or voluntary thereby rendering the waiver in his plea agreement unenforceable. *See Fitzgerald*, 466 F.2d 377 at 379.

## 2. Mr. Safarini's Argument That His Plea Agreement Was Not Knowing And Voluntary is Barred by Procedural Default

Mr. Safarini also contends that his plea was not knowing and voluntary because he "did not understand or appreciate what he was doing when he pled guilty," since he "was not in his right mind" and was "so depressed that he was willing to agree to anything without an understanding of what he was agreeing to and without any regard for what might be best for him." Def.'s Second Reply, ECF No. 173 at 5-6. While Mr. Safarini does not dispute that he procedurally defaulted—i.e., failed to timely challenge his guilty plea on appeal on grounds of knowing and voluntariness—he does assert that his default should be excused because his "severe depression" establishes "cause."[6] *See* Def.'s

---

[6] Mr. Safarini does not make a case for why his jurisdictional argument about the murder of a United States national should surpass the procedural default bar. Moreover, as the government points out, 18 U.S.C. § 2331 was enacted on August 27, 1986, as part of the Omnibus Diplomatic Security and Antiterrorism Act of 1986, just 9 days before the defendant and his co-defendants attempted to hijack Pan Am Flight 73. *See* 18 U.S.C. § 2331(c); Pub. L. 99-399, Title XII, § 1202(a), Aug. 27, 1986, 100 Stat. 896, § 2331, amended Pub. L. 102-572, Title X, § 1003(a)(1), Oct. 29, 1992, 106 Stat. 4521. The date cited by Mr. Safarini is that of an amendment which does not impact his case is any way. Furthermore, the legislation was specifically intended to address extraterritorial attacks on U.S. nationals by terrorists. *See* 132 Cong. Rec. H5944-05, 1986 WL 783573 (99th Cong. 2d Sess., August 12, 1986); H.R. Conf. Rep. 99-783, 99th Cong., 2d Sess. 88, reprinted in 1986 U.S. Code Cong. & Admin. News at 1960-61 (August 12, 1986). The argument thus fails both procedurally and on the merits.

Fourth Suppl., ECF No. 170 at 15-17. He also asserts that he has
established "prejudice" because "he will be saddled forever with
a plea that does not comport with due process and the Sixth
Amendment, that was taken in violation of Rule 11, and that
resulted in him being convicted of an offense he was innocent
of." *Id.* The government does not specifically respond to the
procedural default defense, arguing on the merits that it is
"indisputable that the defendant entered into his guilty plea
both knowingly and intelligently." Gov't's Surreply, ECF No. 162
at 8. The Court finds it unnecessary to reach the merits of Mr.
Safarini's argument because it is barred by procedural default.

Even where a defendant waives the right to appeal or
collaterally attack his conviction as part of his plea
agreement, he does not waive the right to challenge that waiver
itself on the grounds that it was not knowing and voluntary.
*Garza v. Idaho*, 139 S. Ct. 738, 745 (2019); *see also Guillen* 561
F.3d at 529 (a waiver provision is enforceable if the decision
to waive that right is "knowing, intelligent, and voluntary").
For a plea to be voluntary under the Constitution, a defendant
must receive "`real notice of the true nature of the charge
against him.'" *United States v. Yong Ho Ahn*, 231 F.3d 26, 33
(D.C. Cir. 2000) (quoting *United States v. Dewalt*, 92 F.3d 1209,
1211 (D.C. Cir. 1996) (internal citations omitted)). However,
where a defendant raises a non-ineffective-assistance-of-counsel

claim for the first time in a § 2255 motion, he must either: (1) show cause for not raising the claim on appeal and prejudice resulting from not being able to raise that claim now ("cause and prejudice"); or (2) that he is "actually innocent." *Bousley*, 523 U.S. at 623.

The "prejudice" Mr. Safarini claims to have suffered is that "he will be saddled forever with a plea that does not comport with due process and the Sixth Amendment, that was taken in violation of Rule 11, and that resulted in him being convicted of an offense he was innocent of." Def.'s Fourth Suppl., ECF No 170. at 15-17. The Court has already established that these challenges, derivative of Mr. Safarini's jurisdiction argument, go to the merits of the prosecution rather than the Court's ability to hear the case. *See supra* Section IV.A.1. It now turns to the merits of the jurisdiction argument, which raises the question of whether Mr. Safarini was "actually innocent of one of the charges he pled guilty to." Def.'s Fourth Suppl., ECF No. 170 at 17.

As stated above, Mr. Safarini asserts that he can be charged with neither aircraft piracy, since the plane was not in flight, nor with attempted aircraft piracy because, having seized control and completed the offense on the ground, "the aircraft would [not] have been within the special aircraft jurisdiction of the United States had the offense of aircraft

piracy been completed." Def.'s Fourth Suppl., ECF No. 170 at 6-7
(citing 49 U.S.C. App § 1472 (i)(3) (1982)). The government
responds that Mr. Safarini's "conduct was contemplated and
intended by Congress to be punished under 49 U.S.C. App. § 1472
(i), as an attempted aircraft piracy, and the proof of facts, as
proffered by the government and pled to and acknowledged by the
defendant, fully supports his conviction of attempted aircraft
piracy." Gov't's Omnibus Opp'n, ECF No. 151 at 25. The Court
agrees.

Although Mr. Safarini and his fellow hijackers seized
control of the aircraft, as required by the definition of
aircraft piracy, *see* 49 U.S.C. App. § 1472(i)(2) (1982); seizing
control was not enough to complete the attempt of aircraft
piracy. As Mr. Safarini himself concedes, aircraft piracy also
required that "the aircraft actually had to be "in flight" at
the time that the conduct occurred." Def.'s Fourth Suppl., ECF
No. 170 at 6. Therefore, as the government asserts, although Mr.
Safarini and his co-defendants "seized control," their conduct
constituted an "attempt[] to hijack the plane and to force the
cockpit crew to fly to Israel"; "[t]here was no proof that the
defendants committed a completed air piracy because the plane
never left the tarmac." Gov't's Second Opp'n, ECF No. 172 at 7-
8. In contrast, as Mr. Safarini "pointedly" acknowledges, an
aircraft did not have to be in flight for conduct to be charged

as attempted aircraft piracy, *see* Def.'s Fourth Suppl., ECF No.
170 at 6; it merely had to "have been within the special
aircraft jurisdiction of the United States had the offense of
aircraft piracy been completed," 49 U.S.C. App § 1472 (i)(3)
(1982).

In his *pro se* Motion to Clarify and Narrow the Issue Before
this Court and Move for Expedited Decision/Emergency Petition
Immediate Liberty Interest, Mr. Safarini relies on two cases not
cited in his previous pleadings to further his argument. *See*
Def.'s Second Suppl., ECF No. 168 at 2. However, these cases are
easily distinguished. In *United States v. Lopez,* 885 F.2d 1428,
1430 (9th Cir. 1989), one of the two defendants was convicted of
air piracy for commandeering a helicopter to assist in the
escape from prison of the other defendant. In *United States v.
Mena*, the defendant was convicted of air piracy after he
hijacked a seaplane en route from St. Thomas to Puerto Rico,
carrying a tin can that he claimed to be a "very sensitive
explosive device" and threatening to "blow up the aircraft" if
he was not flown to Cuba. 933 F.2d 19, 21-22 (1st Cir. 1991).
However, the holdings in *Lopez* and *Mena* both dealt with a
completed air piracy offense and therefore are irrelevant to the
defendant's argument about the charge of Attempt to Commit Air
Piracy, and Mr. Safarini does not make a case for how they would
matter. The Court concludes that Mr. Safarini has not shown

prejudice or actual innocence to overcome the procedural default

bar for his argument that his plea was not knowing or voluntary.[7]

*See Bousley*, 523 U.S. at 623.

Consequently, after accounting for the waiver of collateral

attacks in Mr. Safarini's plea agreement, as well as procedural

default limitations, the only one of Mr. Safarini's claims that

---

[7] The Court also notes that the record shows both that Mr.
Safarini had extensive notice of his plea and that he understood
the charges against him. Mr. Safarini specifically acknowledged
to the Court and in the presence of his counsel that (1) he was
guilty of all 95 charges listed in the superseding indictment
and that he was pleading guilty because he was in fact guilty
(12/16/03 Tr. at 13, 16, 40); (2) he had had enough time to
consider his plea of guilty and did not need any more time
(12/16/03 Tr. at 13-14); (3) he understood the charges and
maximum penalties (12/16/03 Tr. at 18, 25); (4) he had reviewed
the elements of each of the 95 charges with his attorneys, that
he understood them and that he had had ample opportunity to
discuss the charges with his attorneys (12/16/03 Tr. at 14, 19-
20, 69); (5) he did not want the Court to repeat or review the
elements of the 95 charges again because there was "no reason"
(12/16/03 Tr. at 20); (6) he was waiving the right to pursue any
collateral attacks, except for ineffective assistance of counsel
(12/16/03 Tr. at 25, 44-45); (7) that the government's factual
proffer, consisting of 27 paragraphs, was accurate (12/16/03 Tr.
49-69); (8) he had read and understood the terms of the plea
agreement before he signed it (12/16/03 Tr. at 15-16, 69); (9)
he was satisfied with the services of his attorneys (12/16/03
Tr. at 11, 14); (10) he had had the opportunity to have the plea
agreement translated into his native language, that he had
declined that offer and that he had been able to read and
understand the plea agreement as written in English (12/16/03
Tr. at 15, 46), (11) he was not entering into the plea agreement
as a result of any threats, coercion, duress or any other
improper influences (12/16/03 Tr. at 70); and, (12) that he had
fully understood the plea agreement and that he was knowingly
and voluntarily entering into the agreement of his own free will
(12/16/03 Tr. at 69-70).

he may bring is ineffective assistance of counsel. As a preliminary matter, however, this claim must still be timely to be considered on the merits.

### B. Mr. Safarini's Ineffective Assistance of Counsel Claim Is Untimely

Mr. Safarini's only claim that circumvents his voluntary plea agreement waiver is that "it was objectively unreasonable of his counsel not to raise the issue of his competency prior to allowing him to enter into the plea agreement." Def.'s Reply, ECF No. 159 at 7.[8] The government argues that Mr. Safarini's claims should be dismissed as time-barred. *See* Gov't's Second Opp'n, ECF No. 172 at 15; Gov't's Omnibus Opp'n, ECF No. 151 at 9. Mr. Safarini responds that although untimely, the Court should apply the doctrine of equitable tolling and excuse the late filing of his § 2255 motion. *See* Def.'s Fourth Suppl., ECF No. 170 at 4-5; Def.'s Reply, ECF No. 159 at 9-10. The government replies that the doctrine of equitable tolling is inapplicable because Mr. Safarini's explanation for his late filing does not establish "extraordinary circumstances" that made it "impossible" for him to file a timely § 2255 motion. *See* Gov't's Surreply, ECF No. 162 at 22-25. The Court agrees.

---

[8] The Court need not address Mr. Safarini's ineffective assistance of counsel argument based on lack of jurisdiction over attempted air piracy, *see* Def.'s Fourth Suppl., ECF No. 170 at 13-14; because, as discussed *supra*, Mr. Safarini did not present a jurisdictional issue.

Under § 2255(f), a defendant generally must file a § 2255 motion within one year of the date on which his conviction becomes final. *See Dodd*, 454 U.S. at 357. A petitioner is "entitled to equitable tolling" only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. "'To count as sufficiently 'extraordinary,' ... the circumstances that caused a litigant's delay must have been beyond [his] control'; in other words, the delay 'cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation.'" *Head v. Wilson*, 792 F.3d 102, 107 (D.C. Cir. 2015) (quoting *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014)).

As the government concedes, *see* Gov't's Second Opp'n, ECF No. 172 at 14; the expanded record does show that Mr. Safarini was, at times, "depressed," "sad," "devastated," and "irritable," *see* Exhibit, ECF No. 166-2 at 4-5, 21, 30, 45; *see also id.* at 32 ("Inmate reports feeling depressed and somewhat anxious about his upcoming sentencing"); *id.* at 27 ("Inmate reports feeling a bit relieved about having a status hearing today. He hopes things would not be too bad for him."). While Mr. Safarini's emotions are understandable given his crimes and life sentence, they do not equate to legal incompetence. *See*

*Edmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) ("The issue is not mental illness, but whether the defendant 'has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.'") (Internal citation omitted).

Mr. Safarini fails to direct the Court to anything within the materials that specifically establishes an "extraordinary" circumstance that prevented timely filing. To the contrary, the record is conflicted at best, showing also that Mr. Safarini was "expressive and cooperative" and that "he was doing okay but mildly depressed," Exhibit, ECF No. 166-2 at 32. At another time, he "reported doing relatively well," *id.* at 39. Consequently, the Court concludes that equitable tolling is unwarranted, and Mr. Safarini's § 2255 claim is untimely.

### C. The Writ of *Coram Nobis* Is Not Available to Mr. Safarini Because He is in Custody

Mr. Safarini argues that if the Court concludes that § 2255 is not available to him "for procedural reasons such as procedural default or untimeliness," he should be permitted to bring his claims pursuant to a petition for a writ of *coram nobis*. *See* Def.'s Fourth Suppl., ECF No. 170 at 17-18. The government counters that Mr. Safarini cannot use this writ because he is in custody. *See* Gov't's Second Opp'n, ECF No. 172 at 20. Mr. Safarini replies that "[j]ust because coram nobis

relief is available to people who are not in custody does not
mean that it is categorically unavailable to people who are . .
..” Def.'s Second Reply, ECF No. 173 at 6. The Court concludes
that Mr. Safarini is not entitled to the writ of *coram nobis*.

A petition for a writ of *coram nobis* is "an extraordinary
remedy" that allows criminal defendants to attack their
convictions after they are no longer in custody. *United States
v. Morgan*, 346 U.S. 502, 511 (1954); *United States v. Faison*,
956 F. Supp. 2d 267, 269 (D.D.C. 2013). "Through a writ of error
coram nobis, the federal judge who imposed a sentence has the
discretionary power to set aside an underlying conviction and
sentence which, for a valid reason, should never have been
entered." *Id.* (quoting *United States v. Hansen*, 906 F. Supp.
688, 692 (D.D.C. 1995)). *Coram nobis* is used when "a more usual
remedy is not available because [petitioner] is not in custody
for the conviction he challenges," and "thus cannot attack his
conviction under 28 U.S.C. § 2255." *Id.*; *see also United States
v. Williams*, 630 F. Supp. 2d 28, 30 (D.D.C. 2009).

Mr. Safarini argues that "it is hard to see why, when
seeking coram nobis relief, a person who cannot use § 2255
because he is no longer in custody should be any different than
a person who cannot use it for some other reason—like the
running of the limitations period," Def.'s Second Reply, ECF No.
173 at 7; but he does not present a single case where *coram*

*nobis* has been extended to someone in custody. While the case
Mr. Safarini cites, *United States v. Morgan*, 346 U.S. 502, 511
(1954), does theoretically support the proposition that
prisoners "have rights of collateral attack beyond the confines
of § 2255," Def.'s Second Reply, ECF No. 173 at 7; it is an
implausible stretch to suggest that the Supreme Court's use of
the word "prisoners" in reference to collateral attacks other
than § 2255 is enough to extend the use of *coram nobis* to those
presently in custody. The Court concludes that being in custody
forecloses Mr. Safarini's attempt to seek *coram nobis* relief.

### D. No Further Hearings Are Required to Deny Mr. Safarini's Claims

Mr. Safarini requests an evidentiary hearing on the issue
of whether his plea was knowing and voluntary given his mental
state. *See* Def.'s Reply, ECF No. 159 at 7-8. The government
responds that "[b]ecause this case can be decided on the record,
no hearing is necessary." Gov't's Omnibus Opp'n, ECF No. 151 at
27. The Court agrees.

The Court must grant an evidentiary hearing on a § 2255
motion unless "the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief."
28 U.S.C. § 2255 (1994). The question is whether "it plainly
appears from the face of the motion and any annexed exhibits and
the prior proceedings in the case that the movant is not
entitled to relief in the district court." *United States v.*

*Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting Rules Governing § 2255 Proceedings, Rule 4, 28 U.S.C. foll. § 2255 (1994)). Moreover, "a district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion" when, as here, "the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Id*. Since the record conclusively establishes that Mr. Safarini is not entitled to relief, no further hearing is needed.

## V.   Conclusion

For the foregoing reasons, (1) Defendant's § 2255 Motion, *see* ECF No. 141, is **DENIED**; (2) Defendant's Suppl., *see* ECF No. 145, is **DENIED**; (3) Defendant's Second Suppl., *see* ECF No. 168, is **DENIED**; (4) Defendant's Third Suppl., *see* ECF No. 169, is **DENIED**; and (5) Defendant's Fourth Suppl., *see* ECF No. 170, is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **November 1, 2021**